UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

BMG RIGHTS MANAGEMENT (US), LLC,
PRIMARY WAVE MUSIC PUBLISHING
LLC, NICHOLAS MATTHEW BALDING,
ROBERT CLIFTON BRACKINS III, JON
REDWINE, AND NOTTING DALE SONGS,
INC.,

Case No. 16-cv-7443 (KMW)

**FIRST AMENDED
COMPLAINT**

                                    Plaintiffs,

                    v.

**DEMAND FOR TRIAL BY JURY**

ATLANTIC RECORDING CORPORATION,
WEA, INC., DIJON MCFARLANE p/k/a
"DJ MUSTARD", OMARI GRANDBERRY
p/k/a "OMARION", SONGS MUSIC
PUBLISHING, LLC, SONGS OF UNIVERSAL
INC., UNIVERSAL-SONGS OF POLYGRAM
INTERNATIONAL, INC., CHRISTOPHER
MAURICE BROWN p/k/a, "CHRIS BROWN",
MICAH EVAN POWELL, JHENE AIKO
CHILOMBO p/k/a "JHENE AIKO", MIKELY
WILHELM ADAM, SAMUEL JEAN p/k/a
"SAM HOOK", and LLOYD OLIVER
WILLIS,

                                    Defendants.

----------------------------------------------------------X

        Plaintiffs, BMG RIGHTS MANAGEMENT (US), LLC, PRIMARY WAVE MUSIC

PUBLISHING LLC., NICHOLAS MATTHEW BALDING, ROBERT CLIFTON BRACKINS

III, JON REDWINE, and NOTTING DALE SONGS, INC. (collectively referred to hereafter as

"Plaintiffs"), by their attorneys, Motta & Krents, as and for their First Amended Complaint

against the defendants, ATLANTIC RECORDING CORPORATION, WEA, INC., DIJON

MCFARLANE p/k/a "DJ MUSTARD", OMARI GRANDBERRY p/k/a "OMARION", SONGS

OF UNIVERSAL INC., UNIVERSAL-SONGS OF POLYGRAM INTERNATIONAL INC.,

CHRISTOPHER MAURICE BROWN p/k/a, "CHRIS BROWN", MICAH EVAN POWELL,

JHENE AIKO CHILOMBO p/k/a "JHENE AIKO", MIKELY WILHELM ADAM, SAMUEL

JEAN p/k/a "SAM HOOK", and LLOYD OLIVER WILLIS, (collectively referred to hereafter

as "Defendants""), allege the following:

## THE PARTIES

1.      Plaintiff, BMG Rights Management (US), LLC ("BMG"), is a limited liability

company duly formed and existing under the laws of the State of Delaware with offices in New

York, New York and Los Angeles, California.

2.      Plaintiff, Primary Wave Music Publishing, LLC, d/b/a Primary Wave Beats

(BMI) ("Primary Wave"), is a limited liability company duly formed and existing under the laws

of the State of New York with offices in New York, New York and Los Angeles, California.

3.      Plaintiff, Nicholas Matthew Balding d/b/a Dad's National Publishing (BMI)

("Balding"), is an individual residing in the State of California.

4.      Plaintiff, Robert Clifton Brackins, III d/b/a Settled Publishing (BMI)

("Brackins"), is an individual residing in the State of California.

5.      Plaintiff, Jon Redwine d/b/a Red Soundscapes (BMI) ("Redwine"), is an

individual residing in the State of California.

6.       Plaintiff, Notting Dale Songs, Inc. ("Notting Dale"), is a corporation duly

formed and existing under the laws of the State of California with its principal place of business

in Los Angeles, California.

7.       Upon information and belief, defendant, Atlantic Recording Corporation

("Atlantic"), is a Delaware corporation authorized to do business in the States of New York and

California, with offices in New York, New York and Los Angeles, California.

8.      Upon information and belief, defendant, WEA, Inc. ("WEA"), is a Delaware

corporation authorized to do business in the States of New York and California, with offices in New York, New York and Los Angeles, California.

9.      Upon information and belief, defendant Dijon McFarlane p/k/a "DJ Mustard" ("Mustard"), resides in the State of California.

10.      Upon information and belief, Defendant, Omari Grandberry p/k/a "Omarion" ("Omarion"), resides in the State of California.

11.      Upon information and belief, defendant, Songs Music Publishing, LLC ("Songs"), is a limited liability company organized under the laws of the State of Delaware, with offices in New York, New York.

12.      Upon information and belief, defendant, Songs of Universal, Inc. ("Universal Music Publishing"), is a corporation organized under the laws of the State of California, authorized to do business in the State of New York, with offices in New York, New York and Santa Monica, California.

13.      Upon information and belief, defendant, Universal-Songs of PolyGram International, Inc. ("Universal-PolyGram"), is a corporation organized under the laws of the State of Delaware, authorized to do business in the State of New York, although currently listed as "inactive" by the New York State Department of State, Division of Corporations, with offices in New York, New York and Santa Monica, California.

14.      Upon information and belief, defendant, Christopher Maurice Brown p/k/a "Chris Brown" ("Brown"), resides in the State of California.

15.      Upon information and belief, defendant, Micah Evan Powell ("Powell"), resides in the State of California.

16.     Upon information and belief, defendant, Jhene Aiko Chilombo p/k/a "Jhene Aiko" ("Aiko"), resides in the State of California.

17.     Upon information and belief, defendant, Mikely Wilhelm Adam ("Adam"), resides in the State of California.

18.     Upon information and belief, defendant, Samuel Jean p/k/a "Sam Hook" ("Jean"), resides in the State of California.

19.     Upon information and belief, defendant, Lloyd Oliver Willis ("Willis"), resides in the State of California.

## JURISDICTION

20.      This is an action for (i) a determination that "Post to Be" is a derivative work of "Came to Do" as set forth in 17 U.S.C. §101, (ii) an accounting of the profits derived from the use of "Came to Do" in "Post to Be" and Plaintiffs' equitable share of such profits, (iii) for declaratory judgment as to the proportion of the profits to which Plaintiffs are entitled from Defendants for the use of "Came to Do" in "Post to Be", and (iv) in the event the Court determines Brown authorized the use of "Came to Do" in "Post to Be", an accounting from Brown as to the revenues received and the proportionate share to which Plaintiffs are entitled.

21.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§1331 and 1338(a) as this is an action arising under the Copyright Act and the Copyright Revision Act, 17 U.S.C. §§101, et seq. The Court has supplemental jurisdiction of Plaintiffs' claim seeking an accounting from Brown pursuant to 28 U.S.C. § 1367(a).

## VENUE

22.     Venue of this case is proper in this district pursuant to 28 U.S.C. §§1391(b)(1)

4

and (2) and 1400(a).

## **BACKGROUND**

23.     On or about June 3, 2014 the musical composition, "Came to Do" was completed.   Joseph Bereal ("Bereal"), Balding, Brackins, Redwine and Brown are co-authors of "Came to Do". "Came to Do" was recorded on or about September 12, 2014 and was embodied on Brown's album, *X*, released and distributed by RCA Records, a division of Sony Music Entertainment. *X* premiered at #2 on the Billboard Top 200 Chart and was certified platinum by the Recording Industry Association of America.

24.     On or about November 11, 2013, Redwine entered into an exclusive Co-Publishing and Administration Agreement with BMG and Primary Wave, in which he, in part, assigned to BMG and Primary Wave fifty (50%) percent of his interest in the copyrights of all existing and future compositions in which he was writer or had an interest, including "Came to Do", and the exclusive right to administer one hundred percent (100%) of his interest in such copyrights.

25.     On or about May 26, 2010, Brackins entered into an exclusive Co-Publishing and Administration Agreement with Primary Wave (the "Brackins Co-Publishing Agreement"), in which he, in part, assigned to Primary Wave fifty (50%) percent of his interest in the copyrights of all existing and future compositions in which he was writer or had an interest, including "Came to Do", and the exclusive right to administer one hundred percent (100%) of his interest in such copyrights.

26.     Notting Dale Publishing, Inc. is the publishing company of Joseph Bereal to which Bereal has assigned his interest in the copyrights of all existing and future compositions in

which he was writer or had an interest, including "Came to Do".

27.     On or about September 1, 2013, BMG and Primary Wave entered into a Joint Venture Publishing Agreement, subsequently modified in or about February 11, 2014, providing that the Brackins Co-Publishing Agreement would be deemed a "New Writer Agreement" under the Agreement with the result that that BMG and Primary Wave would jointly and equally own the copyright interests in all musical compositions subject to the Brackins Co-Publishing Agreement.

28.     On or about July 9, 2015, BMG registered the Plaintiffs' copyright interests in "Came to Do" with the U.S. Copyright Office, under the registration number PA0001949837.

29.     Upon information and belief, Mustard is a Hip-Hop and R&B music producer who works primarily with established Hip-Hop and R&B artists, including Omarion.

30.     Upon information and belief, Omarion is a successful recording artist, songwriter, and actor, who has released the following four solo studio albums to date: (1) *O*, released in 2005 and which debuted at #1 on the Billboard Top 200 Chart and the Billboard Top R&B/Hip-Hop Album Chart; (2) *21*, released in 2006, featuring the hit single "Ice Box" which reached the top 20 on the Billboard Hot 100 Chart; and (3) *Ollusion*, released in 2010, embodying the single "I Got It In".

31.     Upon information and belief, Atlantic is a U.S. record label for some of the most well-known musical artists in Hip-Hop and R&B genres, including, in no particular order Omarion, B.o.B, Flo Rida, Bruno Mars, TI, Lil Uzi Vert, Trey Songz, Wale and many more.

32.     Upon information and belief, Atlantic was and is involved in the marketing, manufacture and distribution of sound recordings embodying the musical performances of

recording artists.

33.     Upon information and belief, WEA distributes prerecorded music and audiovisual works, via both physical and digital distribution, including distribution over the Internet, via a number of digital music retailers and music services including, but not limited to iTunes, Amazon.com, and Spotify.

34.     On or about December 2, 2014 Omarion's fourth studio album, *Sex Playlist* (the "Album"), was released in North America, and broke into the top 20 on the *Billboard* Hot 200 Chart and the top 5 of the *Billboard* Top R&B/Hip-Hop Albums. The Album had embodied thereon the top 20 Billboard Hot 100 hit (certified platinum by the RIAA): "Post to Be". The sound recording of "Post to Be" was released as a "single" prior thereto, on or about November 11, 2014.

35.     Omarion, Brown and Aiko are performers on the sound recording of "Post to Be".

36.     Mustard is the producer of the sound recording of "Post to Be".

37.     Upon information and belief, on or about September 21, 2016, a copyright registration was issued for "Post to Be" listing the authors of the musical composition as Brown, Powell, Aiko, Mustard, Adam, Jean, Willis, and Omarion, and including as copyright claimants Universal Music Publishing and Universal–PolyGram.

38.     Upon information and belief, Atlantic was the record label that released the Album, including Post to Be, marketed and manufactured the Album, and authorized WEA to distribute the Album, including "Post to Be".

39.      "Post to Be" is a musical composition embodied upon a sound recording that is included as a track on the Album, and as a disaggregated digital commercial single distributed

7

and sold separate and apart from the Album.

40.     Original musical elements present in "Post to Be" were copied from "Came to Do" creating an unauthorized derivative work, and further, the combination of similarities are substantial with all the similarities being original to "Came to Do".

41.     "Came to Do" and the "Post to Be" were both written in minor keys, with "Came to Do" having been recorded in C minor and the "Post to Be" having been recorded in D-flat minor. As well, the melodies of the title and hook lyrics in "Came to Do" and "Post to Be", namely, "Came To Do" and "Post To Be" are identical in pitches, intervals, rhythmic durations and beat placement, and heard within a larger melodic phrase with additional similarities.

42.     "Came to Do" was used as a compositional template for "Post to Be", including the first sixteen measures present in both works. Many similarities are present, further proving that "Post to Be" copied "Came to Do", thereby creating a derivative work. Some of the similarities are as follows:

(a) The two-measured synthesized bass line is the main instrumental feature in the opening four measures of both "Came to Do" and "Post to Be", inclusive of similar syncopated rhythms.

(b) The pre-chorus parts of both "Post to Be" and "Came to Do" (inclusive of substantially similar vocal melodies) are introduced at precisely measure five commencing ten (10) seconds into both "Came to Do" and "Post to Be".

(c) Claps or snaps are introduced in the backbeats at precisely measure five in "Came to Do" and "Post to Be".

(d) "Oh" and "oo" backing vocals commence exactly on the pickup at 0:29 to measure

thirteen in both "Came to Do" and "Post to Be", which is the first measure of Chorus One in "Came to Do" and "Post to Be".

(e) Chanted (or whispered) background vocals on off-beats are introduced at precisely measure thirteen which, as previously noted, is the first measure of Chorus one in "Came to Do" and "Post to Be".

(e) A more complex drum pattern is introduced in measure thirteen which is the first measure of Chorus one in "Came to Do" and "Post to Be".

(f) The corresponding measures in "Came to Do" and "Post to Be" is the first measure after the four (4) measure introductory section, featuring bass but not drums in both "Came to Do" and "Post to Be".

(g) The tempo of "Came to Do" is at 98 beats per minute ("BPM") and the tempo of "Post to Be" is 97.6 BPM.

43.     Upon information and belief, Songs is a music publishing company that represents the copyrights of musical compositions and songwriters and, at all times herein, has co-published and co-administered the alleged interest of writer(s) to "Post to Be".

44.     Upon information and belief, Universal Music Publishing and Universal-PolyGram are music publishing companies that represent the copyrights of musical compositions and songwriters and, at all times herein, have co-published and co-administered the alleged interest of writer(s) of "Post to Be".

**FIRST CLAIM AGAINST ATLANTIC, WEA, SONGS, UNIVERSAL MUSIC PUBLISHING, UNIVERSAL-POLYGRAM, MUSTARD, OMARION, BROWN, POWELL, AIKO, ADAM, JEAN AND WILLIS FOR AN ACCOUNTING**

45.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 44.

46.     Atlantic, WEA, Songs, Universal Music Publishing, Universal-Polygram, Mustard, Omarion, Brown, Powell, Aiko, Adam, Jean and Willis have all received payments and profited from the use of "Came to Do" in "Post to Be" in a number of ways including, but not limited to, the following: (1) through the distribution and sale, and/or the authorizing of others to distribute and sell "Post to Be"; (2) authorizing and/or licensing "Post to Be" including for digital downloads; (3) commercially exploiting Post to Be; (4) performing or authorizing the performance of "Post to Be"; and/or (5) causing and/or materially contributing to and/or by substantially participating in and furthering the above-mentioned acts, and/or sharing the proceeds therefrom, all through sales of "Post to Be".

47.     "Came to Do" was incorporated in "Post to Be" which was embodied upon the Album, and as a disaggregated digital single distributed and sold separate and apart from the Album, when it was released on December 2, 2014.

48.     Upon information and belief, Atlantic, WEA, Songs, Universal Music Publishing, Universal-Polygram, Mustard, Omarion, Brown, Powell, Aiko, Adam, Jean and Willis have received royalties for the licensing of "Post to Be" for digital downloads and public performance including streaming via the Internet.

49.     Atlantic, WEA, Songs, Universal Music Publishing, Universal-Polygram, Mustard, Omarion, Brown, Powell, Aiko, Adam, Jean and Willis have received payments and profited from the use of "Came to Do" in "Post to Be" without accounting for and remitting the appropriate amount of such payments to Plaintiffs.

50.     Plaintiffs are entitled to an equitable proportion of the profits obtained by Defendants from the use of "Came to Do" in "Post to Be". To determine the amount due from

Defendants Plaintiff are entitled to an accounting from Defendants of the gains, profits and advantages they obtained as a result of the use of "Came to Do" in "Post to Be".

51.     Plaintiffs are at present unable to ascertain the full extent of the gains, profits, and advantages Defendants have obtained by reason of the use of "Came to Do" in "Post to Be", but Plaintiffs believe that Defendants have obtained gains, profits, and advantages in an amount entitling Plaintiffs to more than $150,000.00 as their equitable share.

**SECOND CLAIM AGAINST ATLANTIC, WEA, SONGS, UNIVERSAL MUSIC PUBLISHING, UNIVERSAL-POLYGRAM, MUSTARD, OMARION, BROWN, POWELL, AIKO, ADAM, JEAN AND WILLIS FOR DECLARATORY JUDGMENT AS TO THE INTEREST OF THE PLAINTIFFS IN THE PROFITS DERIVED FROM THE USE OF "CAME TO DO" IN "POST TO BE"**

52.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 51.

53.     Defendants have failed to recognize and acknowledge the substantial interest of the Plaintiffs in the profits derived from the use of "Came to Do" in "Post to Be", and have taken the position that the Plaintiffs are not entitled to any portion of such profits derived from "Post to Be".

54.     "Post to Be" is a derivative work of "Came to Do" containing a portion of "Came to Do" co-written by Brackins, Redwine, Balding and Bereal.

55.     A declaratory judgment is necessary to determine the rights of the Plaintiffs in the profits derived by Defendants from the use of "Came to Do" in "Post to Be", including, but not limited to, the profits derived from the sale of physical and digital albums, including digital download royalties of whole albums/ "singles"/digital Track Equivalent Albums, and ringtone/ringback royalties, based on such ownership.

11

## ALTERNATIVE THIRD CLAIM AGAINST BROWN FOR
## AN ACCOUNTING OF REVENUES FROM ANY AUTHOIZATION GIVEN BY
## BROWN TO USE "CAME TO DO" IN "POST TO BE"

56.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 55.

57.     Upon information and belief, Brown has authorized the use of "Came to Do" in "Post to Be" for which gains, profits, and advantages in an amount exceeding $150,000.00.

58.     Brown has failed to account and pay to the co-writers and co-owners of the copyright in the musical composition of "Came to Do" their equitable share of Brown's share of the proceeds.

59.     As co-owners of Came to Do Plaintiffs are entitled to an accounting for their proportionate share of the revenues received by Brown from the use of "Came to Do" in "Post to Be".

60.     Plaintiffs are at present unable to ascertain the full extent of the revenues obtained by Brown by reason of the use of "Came to Do" in "Post to Be", but Plaintiffs believe Brown has obtained such gains, profits, and advantages entitling Plaintiffs to more than $150,000.00 as their equitable share.

**WHEREFORE,** Plaintiffs demand judgment as follows:

a)     That Defendants be ordered to submit to an accounting so that all gains, sales, profits, and advantages derived by Defendants from the use of "Came to Do" in "Post to Be" may be determined.

b)     For Plaintiffs' share of the profits realized by Defendants from the use of "Came to Do" in "Post to Be" in an amount to be determined at trial, not less than $150,000.00.

c)     For declaratory judgment of Plaintiffs' interest in the profits derived from the use

12

of "Came to Do" in "Post to Be", and that the Court order payment of future profits based upon

such interest.

        d)      In the event it is determined Brown authorized the use of "Came to Do" in "Post

to Be" for an order requiring Brown to a account for all gains, sales, profits, and advantages

derived from such authorization, and for an award to Plaintiffs of their proportionate share of

such income, in an amount in excess of $150.000.00.

        e)      For Plaintiffs' costs and disbursements and for such other and further relief as the

Court deems just and proper.

Dated: New York, New York
       September 15, 2017

                                      __s/_____
                                        ANTHONY MOTTA
                                        ANDREW KRENTS
                                        MOTTA & KRENTS
                                        Attorney for Plaintiffs
                                        50 Broadway, Suite 800
                                        New York, N.Y. 10004-1874
                                        Tel: (212) 791-7360
                                        Fax: (212) 791-7468